IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRYAN S. MICK, Personal Representative of the Estate of Print Zutavern, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>DEPUTY BARRETT GIBBONS, et al.,<br><br>Defendants. | 4:22-CV-3025<br><br>MEMORANDUM AND ORDER |

Bryan Mick, the personal representative of the Estate of Print Zutavern, sued, among others, several members of the Nebraska State Patrol (NSP) under 42 U.S.C. § 1983, alleging these officers violated Mr. Zutavern's constitutional rights while attempting to detain him for transport to a mental health facility. *See* filing 1. After a lengthy standoff between Mr. Zutavern and law enforcement, Mr. Zutavern was fatally injured by Trooper Brandon Wilkie. *See* filing 1 at 13.

The Court granted the NSP defendants' motion to dismiss (filing 46), terminating Captain Tyler Schmidt, Trooper Levi Cockle, Lieutenant Tim Arnold, Trooper Carlos Trevino, Sergeant Matt Workman, and Trooper Sam Mortenson as parties. Filing 64. This matter is now before the Court on the plaintiff's motion to alter or amend the judgment (filing 67). According to the plaintiff, granting this motion will allow the Court to rectify its decision to dismiss these defendants without giving the plaintiff any "possibility of amendment to cure deficiencies" in the complaint. Filing 72 at 7. For the reasons outlined below, the Court will deny the plaintiff's motion.

I. BACKGROUND

The Court's memorandum and order on the NSP defendants' motion to dismiss included a thorough summary of the facts underlying the plaintiff's claims. *See* filing 64. Here, the Court will focus on the procedural history material to the pending motion.

The plaintiff's complaint was filed on February 22, 2022. Filing 1. In response, the NSP defendants filed a motion to dismiss on May 26, 2022, arguing (1) the official-capacity claims against them were barred by the Eleventh Amendment, and (2) the plaintiff failed to state a claim against them in their individual capacities. *See* filing 46. Upon the plaintiff's partial confession, the official-capacity claims against the NSP defendants were dismissed. *See* filing 49. And the Court was left to determine whether the plaintiff sufficiently stated a § 1983 claim against each NSP defendant in his individual capacity.[1]

According to the NSP defendants, the broad and conclusory allegations in the plaintiff's complaint failed to demonstrate how each officer's individual actions violated Mr. Zutavern's constitutional rights. *See* filing 47 at 6-8; filing 61. And since the plaintiff failed to "independently assess each defendant's alleged conduct" and tie it to a constitutional violation, the plaintiff failed to state a claim for relief. *See* filing 47 at 8. In his brief opposing the NSP defendants' motion to dismiss, the plaintiff, "appreciat[ing] NSP Defendants' request for greater clarity in allegations of their roles and the violations

---

[1] The NSP defendants did not move to dismiss the individual-capacity claims against Trooper Wilkie. Filing 47 at 6. Therefore, the Court's previous ruling, and the plaintiff's motion to alter or amend that decision, has no bearing on the individual-capacity claims pending against Trooper Wilkie. Accordingly, the Court's use of "NSP defendants" in its analysis below refers exclusively to the terminated NSP defendants.

committed in those roles[,] . . . . respectfully ask[ed] for leave to amend." Filing 53 at 5. And in conjunction with this request, the plaintiff included bullet points of information that would allegedly clarify how each NSP defendant violated Mr. Zutavern's constitutional rights. Filing 53 at 5-6. Still, the NSP defendants argued that, even considering these additional allegations, the plaintiff failed to state individual-capacity claim against them. *See* filing 60 at 9, 14 n.12. Specifically, the NSP defendants asserted that (1) the plaintiff failed to allege sufficient facts for the Court to reasonably infer they individually participated in a pre-shooting seizure of Mr. Zutavern, and (2) even if a pre-shooting seizure occurred, they were entitled to qualified immunity. *See* filing 60 at 9, 13; filing 61 at 2.

The Court considered the plaintiff's additional allegations in deciding the defendants' motion to dismiss, and on August 23, 2022, concluded that the plaintiff had, in fact, failed to state a claim against the NSP defendants. *See* filing 64 at 27 n.6. Following the Court's order terminating the NSP defendants as parties, the plaintiff filed this motion to alter or amend the judgment. *See* filing 67. Specifically, the plaintiff moved the Court to reconsider its decision to grant the NSP defendants' motion to dismiss "without leave to amend" under "Fed. R. Civ. P. 59(e) and/or Fed. R. Civ. P. 60." Filing 67 at 1. And the plaintiff included with this motion, for the first time, a copy of his proposed amended pleading. *See* filing 69-1.

According to the plaintiff, the Court dismissed his claims against the NSP defendants "with zero allowance of any ability to cure deficiencies or better plead when the seizure took place." Filing 68 at 6. Additionally, he argues that the Court inappropriately (1) required him, at the pleading stage, to *prove* the officers unreasonably seized Mr. Zutavern prior to the shooting, *see* filing 68 at 6, 11, and (2) considered and granted qualified immunity, *see*

- 3 -

filing 72 at 7. Conversely, the NSP defendants argue that relief under Rules 59 and 60 is inappropriate at this stage, and that reconsideration of the Court's prior order is improper where the plaintiff "chose to 'stand and fall' on [his] claims as pleaded." *See* filing 70 at 3 (quoting *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 744 (8th Cir. 2014)). The Court will address each of these arguments in turn.

## II. STANDARDS

The parties disagree on what rules and standards govern the plaintiff's request for relief. The plaintiff describes his motion as a motion "to allow reconsideration of [the] Defendants' motion to dismiss without leave to amend" under Rules 59(e) and 60. Filing 67; *see* filing 68 at 1-3. And according to the plaintiff, these rules empower the Court to alter its prior order to remedy this mistake and prevent injustice. *See* filing 68 at 2-3. But the NSP defendants argue that the plaintiff (1) cannot obtain relief under Rule 59(e) because there is no final judgment, and (2) is not entitled to relief under Rule 60(b) because he does not argue that any "of the [rule's] five discrete bases for relief . . . apply here." Filing 70 at 4. Instead, the NSP defendants contend that, at this stage, Fed. R. Civ. P. 54(b) is the only mechanism for the Court to reconsider its prior order. *See* filing 70 at 5.

It is true that, if a dismissal order doesn't grant leave to amend, a plaintiff may "seek vacation of the judgment under Rules 59 and 60(b)." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015). In these circumstances, Rule 59(e) gives a district court broad discretion to grant a motion to alter or amend a judgment to correct manifest errors of law or fact, or to present newly discovered evidence. *See United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006). And similarly, under Rule 60(b), "[a] district court has discretion . . . to grant postjudgment leave to file an

amended complaint if the motion is 'made within a reasonable time,' and the moving party shows 'exceptional circumstances' warranting 'extraordinary relief.'" *Mask of Ka-Nefer-Nefer*, 752 F.3d at 743 (quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986), *cert. denied*, 484 U.S. 836 (1987)).

Rule 59(e) makes it clear that district courts are vested with the power to alter or amend a "judgment," which includes "a final judgment and an appealable interlocutory order" but does not "encompass an order dismissing fewer than all of the opposing parties or claims unless the district court directs the entry of final judgment under Rule 54(b), or expressly indicates that the order is an immediately appealable interlocutory decision." *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008). And while Rule 60(b) also allows district courts to reconsider final judgments and orders, an order is not final under the rule if "claims between the other parties to the litigation remain[] unresolved." *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993).

Here, the Court's order did not dismiss all of the plaintiff's claims or all of the named defendants. *See* filing 1; filing 64. Nor did the Court enter a final judgment or indicate the order was immediately appealable. *See* filing 64. Simply put, the Court entered no judgment subject to Rule 59 ("motion to alter or amend a judgment") and no final judgment or order to seek relief from under Rule 60 (relief from "a final judgment, order, or proceeding").

As such, the plaintiff's motion to reconsider is more appropriately considered under Rule 54(b). *See Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 n.3 (8th Cir. 2015). Though the plaintiff did not cite Rule 54 in his motion, the Court will consider the merits of his request under this standard, as "the substance of a motion rather than the form . . . is controlling." *John v.*

*MainGate, Inc.,* 2014 U.S. Dist. LEXIS 105392, \*7 (D. Minn. Aug. 1, 2014) (quoting *BBCA, Inc. v. United States*, 954 F.2d 1429, 1431-32 (8th Cir. 1992)).

Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." However, a motion for reconsideration, including one made under Rule 54(b), is "not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *See Julianello,* 791 F.3d at 923. Instead, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citations omitted). Accordingly, the inquiry under Rule 54(b) "is more narrow" than that under Rule 15(a). *Julianello,* 791 F.3d at 922.

### III. DISCUSSION

The plaintiff argues there was no "substantial reason" to deny leave to amend "without providing any opportunity to cure deficiencies in the Complaint." Filing 68 at 3. If the plaintiff had no opportunity to amend his complaint prior to the Court's dismissal of the NSP defendants, such a decision would raise concern. But that is not an accurate characterization.

Fed. R. Civ. P. 15 "governs when and how a plaintiff may amend his complaint." *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). Under Rule 15(a)(1), a plaintiff may do so once as a matter of course within 21 days of serving the complaint, or 21 days after service of a motion under Rule 12(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2). Though courts should freely give leave when justice so requires, "the

plaintiff must follow proper procedures." *Thomas*, 743 F.3d at 1134 (citing *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009)). Thus, in this district, when parties move for leave to amend a pleading they "must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments." NECivR 15.1(a).

Ultimately, whether to grant a party's pre-trial motion for leave to amend is within the Court's discretion, and "parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). For example, a Court may deny a motion for leave to amend if it determines the proposed amendments would be futile. *Id*. "[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

At no point during the progression of this case—including after the NSP defendants served their 12(b)(6) motion—did the plaintiff amend his complaint as a matter of course as authorized under Rule 15(a)(1). *See* filing 72 at 1. Nor did the plaintiff, at any point, file a motion to amend his complaint under Rule 15(a)(2). *See* filing 72 at 1. Instead, the plaintiff made a "conditional request" for leave to amend in his brief opposing the NSP defendants' motion to dismiss. *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1036 (8th Cir. 2019). In conjunction with this request, the plaintiff "proposed amendments to cure alleged deficiencies." Filing 72 at 2; *see* filing 53 at 5-6.

And although the plaintiff did not follow the procedures to propose these amendments, the Court construed his complaint *and these additional allegations* liberally to determine if he stated a claim against the NSP

defendants. *See* filing 64 at 8-9. The plaintiff's original complaint seemingly alleged that the NSP defendants violated Mr. Zutavern's Eighth and Fourteenth amendment rights.[2] The Court found the plaintiff failed to state these claims, and the plaintiff does not dispute this conclusion. *See* filing 64; filing 68 at 14.

The Court also considered whether the plaintiff sufficiently alleged that the NSP defendants violated Mr. Zutavern's Fourth Amendment rights. Even though the plaintiff's complaint did not make any direct references to an "unreasonable seizure," "excessive force," or the Fourth Amendment, *see* filing 60 at 9, the Court considered the additional allegations in his brief—despite their brief and conclusory nature—claiming that the NSP defendants "participated in the unreasonable seizure" of Mr. Zutavern.[3] *See* filing 64 at 8-13. In determining if the plaintiff sufficiently alleged each NSP defendant's individual participation in a Fourth Amendment violation, however, the Court was limited to the facts actually alleged by the plaintiff.

At no point prior to the Court's order did the plaintiff assert, as he does now, that "[t]he seizure of PRINT began when law enforcement assumed positions on Rolling 7 Ranch and restrained PRINT's movement." Filing 68 at

---

[2] Specifically, the plaintiff's original cause of action against the NSP defendants alleged that: "Defendants, and each of them, acted with deliberate indifference to PRINT's known and recognized constitutional and legal rights to *due process, equal protection and bodily integrity and to be free from excessive punishment* and indifference to his psychiatric medical needs. Defendants actively participated in the deprivation of PRINT's constitutional rights by causing PRINT to be subject to fatal gunshot wounds." Filing 1 at 17 (emphasis added).

[3] The plaintiff's proposed amendments did not include any additional factual allegations to support this conclusion, or the inference that the NSP defendants' seized Mr. Zutavern prior to the shooting.

5. Nor could such a claim have been reasonably inferred from the facts the plaintiff *did* allege—including that Mr. Zutavern: (1) refused multiple requests by law enforcement to turn himself in; (2) warned law enforcement to stay away from the clubhouse; (3) fled the clubhouse, "climbed onto the RAZR, turned the keys in the ignition and pulled away"; and (4) did not stop the RAZR while he was being pursued by officers. *See* filing 1. Thus, even when liberally construed, the facts and allegations actually made by the plaintiff *prior to the Court's ruling on the NSP defendants' motion to dismiss* did not support the reasonable inference that Mr. Zutavern submitted to the officers' show of authority and was seized as soon as the officers assumed their positions at the ranch.

Instead, the Court analyzed each NSP defendant's involvement in the pre-shooting seizure that *could* reasonably be inferred from the plaintiff's allegations and concluded that the plaintiff failed to state a claim against the NSP defendants. *See* filing 64 at 27 n.6. Therefore, while the Court did deny the plaintiff's conditional request for leave to amend, *it did so only after considering his proposed amendments and determining they would be futile.* As such, the Court sees no manifest error in its decision, as futility is indisputably a substantial reason to deny a request for leave to amend. *See Julianello,* 791 F.3d at 922; *see also Soueidan,* 926 F.3d at 1037 n.5.[4]

The plaintiff's conditional request for leave to amend also vaguely suggested that his amended complaint may contain other allegations in addition to those specifically expressed. *See* filing 53 at 5-6. But the Court was not required to, nor should it have to, predict the substance and merits of a party's proposed amendments. Instead, the plaintiff chose to "stand and fall"

---

[4] And the Court was not obliged to invite further amendments that the plaintiff had not moved to proposed. *Mask of Ka-Nefer-Nefer*, 752 F.3d at 742.

- 9 -

on the allegations in his complaint and conditional request to amend in defending against the NSP defendants' motion to dismiss. In fact, even after the NSP defendants' reply brief put the plaintiff on notice of their position—that, even considering his additional allegations, the plaintiff failed to sufficiently allege their involvement in a pre-shooting seizure and address issues of qualified immunity, *see* filing 60 at 9, 13—the plaintiff still chose not to utilize Rule 15(a)(2), which would have allowed him to provide the Court with a complete amended pleading to consider before its ruling on the defendants' motion. The plaintiff's decision not to do this in the two months between the NSP defendants filing their reply brief and the Court issuing its ruling was a tactical decision that cannot now be characterized as an injustice. *See Ash*, 799 F.3d at 963-64.

And now, after the Court has ruled on the defendants' motion to dismiss, the plaintiff is attempting to use a motion to reconsider to propose additional amendments to his complaint. In fact, for the first time, the plaintiff has included a copy of his proposed amended pleading. *See* filing 69-1. While these additional allegations attempt to establish the plaintiff's claim that Mr. Zutavern was seized as soon as law enforcement arrived at the ranch, the plaintiff offers no explanation as to why these facts and allegations could not have been presented prior to the Court's ruling on the NSP defendants' motion to dismiss. *See Ash*, 799 F.3d at 963-64.

In sum, where the plaintiff never moved to amend his complaint under Rule 15 in compliance with Court's local rules, and the Court fully considered the allegations proposed in his conditional request to amend, it cannot be said that the Court granted the defendants' motion to dismiss without providing the plaintiff any opportunity to cure deficiencies. That the plaintiff did not have more opportunities to cure deficiencies can only be explained by the

plaintiff's decision not to use the avenues available to him under Rule 15. Accordingly, the Court finds there is no manifest error or exceptional circumstances justifying the Court's reconsideration of its prior order under Rule 54(b).

Lastly, the Court will briefly address other issues raised by the plaintiff that allegedly merit reconsideration. First, the plaintiff asserts that the Court inappropriately addressed qualified immunity at the motion to dismiss stage. *See* filing 72 at 7. However, "[u]nder the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Not only *can* the Court consider qualified immunity at the motion to dismiss stage, it has an obligation to do so when immunity is established on the face of the complaint, as it was here. *See Spann v. Lombardi,* 960 F.3d 1085, 1087 (8th Cir. 2020) (citing *Payne v. Britten,* 749 F.3d 697, 700-01 (8th Cir. 2014)); *Bradford v. Huckabee,* 394 F.3d 1012, 1015 (8th Cir. 2005).

The Court also did not err in raising the issue of qualified immunity *sua sponte* as to Captain Schmidt. *See* filing 68 at 4. The issue of qualified immunity raises two important questions: (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips,* 664 F.3d 232, 236 (8th Cir. 2011). And although Captain Schmidt did not directly invoke qualified immunity, he argued extensively that the plaintiff failed to allege his involvement in a violation of Mr. Zutavern's

constitutional rights. *See* filing 61 at 5. Given the inference of such arguments—and that the Court was already addressing qualified immunity extensively, as it was raised by all of the other NSP defendants—the Court was within its power to address this issue *sua sponte* as to Captain Schmidt. *See Gardner v. Franklin,* 2022 WL 1751388, *29, n.2 (D. Neb, May 31, 2022) (citing *Story v. Foote*, 782 F.3d 968, 969-70 (8th Cir. 2015)).

Next, the plaintiff argues that the Court relied on an unpled statement—that Trooper Cockle "was briefed on the nature of the operation"—in determining he was entitled to qualified immunity. *See* filing 68 at 12. When constructing this sentence, the Court relied on the plaintiff's allegation that Trooper Cockle arrived on the scene "knowing that the goal was to get a suicidal subject into a mental health facility." Filing 1 at 10. The Court's analysis of whether Trooper Cockle was entitled to qualified immunity did not rest on Trooper Cockle knowing any information other than that which the plaintiff conceded he knew. That the Court could have paraphrased the plaintiff's allegations differently does not make its conclusion erroneous. Nor is the Court's analysis erroneous for relying on facts directly alleged in the plaintiff's complaint *i.e.*, that Trooper Cockle "could not" arrest Mr. Zutavern hands-on "because he was holding a rifle." *See* filing 1 at 13; filing 64 at 15; filing 68 at 13.

Finally, the Court is unsure how to address the plaintiff's argument that the Court erroneously concluded that Lieutenant Arnold and Trooper Trevino's use of deadly force ("shooting the subject dead") didn't violate clearly established law. Filing 68 at 13. This simply is not a conclusion the Court reached. *See* filing 64 at 18-21. According to the plaintiff's complaint, neither officer fired their weapons at Mr. Zutavern, or applied any kind of deadly force. In fact, he alleged quite the opposite—that although the men rammed the

RAZR that Mr. Zutavern was driving, Mr. Zutavern stayed on the RAZR and had no response to the provocation. *See* filing 64 at 20. And these are the facts the Court relied on in deciding whether these officers were entitled to qualified immunity; the Court considered whether a reasonable officer in these specific circumstances would have known that ramming the RAZR violated Mr. Zutavern's clearly established Fourth Amendment rights. *See* filing 64 at 18-21. To the extent the plaintiff is using Rule 54(b) to relitigate the Court's qualified immunity decision, reconsideration under this rule is not intended to give plaintiffs a second bite at the apple using the same facts.

## IV. CONCLUSION

In sum, the plaintiff has failed to identify a manifest error in the Court's prior order. Additionally, he has failed to provide any explanation as to why the facts he presents now for the first time—and after the Court's dismissal of the NSP defendants—could not have been raised prior to this point. As such, the Court sees no exceptional circumstances and the plaintiff's motion for reconsideration will be denied. If the plaintiff still wants to ask for leave to file an amended complaint, he should do so pursuant to the rules governing such a request—Rule 15(a)(2) and NECivR 15.1.

IT IS ORDERED that the plaintiff's motion to alter or amend the judgment (filing 67) is denied.

Dated this 9th day of March, 2023.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge