IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRYAN S. MICK, Personal Representative of the Estate of PRINT ZUTAVERN, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY BARRETT GIBBONS, in his individual and official capacities; DEPUTY LAWRENCE STUMP, in his individual and official capacities; SHERIFF DAN OSMOND, in his individual and official capacities; COUNTY OF CUSTER, a Nebraska political subdivision, d/b/a CUSTER COUNTY SHERIFF'S OFFICE; TRP. BRANDON WILKIE, in his individual capacity; and JOHN/JANE DOE, a training supervisor of the Nebraska State Patrol, in his/her individual and official capacities,<br><br>Defendants. | Case No. 4:22-cv-3025<br><br><br><br>BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA BY NEBRASKA STATE PATROL |

The Nebraska State Patrol ("NSP"), by undersigned counsel, submits the following brief in support of its Motion to Quash Subpoena.

## INTRODUCTION

This case involves Section 1983 claims pressed against Custer County, Nebraska, its Sheriff, two Custer County sheriff's deputies, and one NSP trooper, Brandon Wilkie, that flow from the shooting death of Print Zutavern during an alleged mental health episode. Neither the State of Nebraska nor NSP, an arm of the

Page **1** of **13**

State, is currently a party to this lawsuit.[1] Although not a party, NSP is the employer of Defendant Wilkie. Plaintiff Bryan Mick, the personal representative of Zutavern's estate, has issued a third-party Rule 30(b)(6) subpoena directed at NSP that requires NSP to produce individuals knowledgeable about six wide-ranging topics and seeks to compel the designated individuals to testify about those topics at an upcoming deposition.[2]

As an instrumentality of the State of Nebraska, NSP enjoys the full breadth of protection provided by Nebraska's sovereign immunity. Because sovereign immunity shields a State from disruptive third-party discovery requests, such as the 30(b)(6) deposition at issue here, NSP moves to quash Plaintiff's subpoena.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a district court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected

---

[1] In addition to the parties named above, Plaintiff originally filed suit against six other NSP law enforcement officers, in both their individual and official capacities. (Filing No. 1). Plaintiff consented to the dismissal of the official capacity claims because the State of Nebraska's sovereign immunity precludes Section 1983 claims from being pursued against it. (Filing No. 49). The individual capacity claims against each of the NSP troopers—except Defendant Wilkie—were dismissed on the basis of qualified immunity. (Filing No. 62, 64).

[2] The subpoena directs NSP to produce a "person most knowledgeable" regarding the training of NSP officers, such as Wilkie, in the following six areas:
1. Responding to person experiencing a mental health crisis;
2. Response to and resolution of events involving barricaded subjects/suspects;
3. Use of force (non-lethal and lethal);
4. Police service dogs and dog handling, including in tactical events;
5. Special Weapons and Tactics and/or SWAT; and
6. Video recording devices (body-worn, dashboard, robot).

(*See* Filing No. 126-1 - Pl. Subpoena at 2).

matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). Sovereign immunity protects States from disruptive third-party discovery requests. *See Alltel Commc'ns, LLC v. DeJordy,* 675 F.3d 1100, 1104–05 (8th Cir. 2012); *Russell v. Jones,* 49 F.4th 507, 512 (5th Cir. 2022); *see also Felix v. Cnty. of Nassau,* 344 F.R.D. 441, 444 (E.D.N.Y. 2023) (finding that sovereign immunity qualified as a "type of privilege or protection applied to grant a motion to quash").

"A motion to quash, or for a protective order, should generally be made by the person from whom [discovery is] requested." *Knapp v. Novartis Consumer Health, Inc.,* No. 4:14-CV-3007, 2014 WL 7082089, at *2 (D. Neb. Dec. 12, 2014) (internal quotation marks and citation omitted). "Discovery matters," like a motion to quash, "are committed to the sound discretion of the trial court." *United States v. Adcock,* 558 F.2d 397, 406 (8th Cir. 1977). That said, the breadth and scope of sovereign immunity presents a legal question that is ultimately subject, on appeal, to de novo review. *Lors v. Dean,* 746 F.3d 857, 861 (8th Cir. 2014). Furthermore, sovereign immunity is a "jurisdictional threshold matter" that "may be raised at any time." *Id.* (internal quotation marks and citations omitted).

## ARGUMENT

NSP is immune from a disruptive subpoena that compels it to designate knowledgeable individuals and demands their testimony at a 30(b)(6) deposition. This Court should grant NSP's motion to quash.

I. **SOVEREIGN IMMUNITY SHIELDS NSP FROM COMPELLED TESTIMONY AT A 30(B)(6) DEPOSITION.**

NSP is shielded from a disruptive third-party discovery request by Nebraska's sovereign immunity. "[S]overeign immunity is an immunity from *suit* (including discovery), not just liability." *Jones*, 49 F.4th 507, 514 (5th Cir. 2022) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in original); *see also Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1493 (2019) (At the time of the Founding, sovereign immunity "prevented States from being amenable *to process* in any court without their consent.") (emphasis added); *The Siren*, 74 U.S. 152, 154 (1868) ("[States] cannot be subjected to *legal proceedings* at law or in equity without their consent.") (emphasis added). The Eighth Circuit has held that a "third-party subpoena" qualifies as a "suit" in at least some circumstances, explaining that such a subpoena "command[s] a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming." *DeJordy*, 675 F.3d at 1103; *see also id*. at 1105. "The potential for severe interference with government functions"—one of the prime disruptions that sovereign immunity is intended to guard against—"is apparent." *Id.* at 1103.

Despite the substantial protection States are usually afforded by sovereign immunity,[3] Eighth Circuit precedent permits them, in limited circumstances, to be subject to narrow, minimally disruptive third-party discovery requests. *See In re Missouri Dep't of Nat. Res.*, 105 F.3d 434 (8th Cir. 1997) ("*Missouri DNR*"). There, the Missouri Department of Natural Resources, an arm of the State of Missouri, was the

---

[3] *See Jones*, 49 F.4th at 514 ("Where sovereign immunity applies, it applies totally.").

target of a third-party subpoena duces tecum and withheld 137 documents raising "various assertions of privilege." *Id.* at 435. The Department also invoked sovereign immunity. *Id.* The Eighth Circuit, concluding that this limited document production did not "infringe[] on the State of Missouri's autonomy or threaten[] its treasury" ordered the agency to disclose the withheld documents despite that invocation. *Id.* at 436.

Subsequent precedent demonstrates that *Missouri DNR* may have a more limited application. In *DeJordy*, the Eighth Circuit considered the amenability of a tribal sovereign to a third-party discovery request. 675 F.3d at 1103. Although it acknowledged the existence of *Missouri DNR*, *DeJordy* determined that *Missouri DNR* did not announce a categorical rule governing all invocations of sovereign immunity in response to a third-party discovery request. *Id.* at 1104; *see also Webb v. City of Maplewood*, 889 F.3d 483, 488 (8th Cir. 2018) (relying on *DeJordy* for the proposition that "any State official or entity . . . subpoena[ed] for discovery may raise a claim of sovereign immunity at that time," at which point a district court can assess "whether the subpoena can be quashed on that ground"). *DeJordy* found that the tribal sovereign resisting that discovery request was shielded by tribal sovereign immunity. *DeJordy*, 675 F.3d at 1106. And, furthermore, the Court suggested that *Missouri DNR* may not govern in the event a State sovereign sought to resist a "disruptive third-party subpoena[] that would clearly be barred in [the] State's own courts." *Id.* at 1104–05.

The 30(b)(6) subpoena at issue here falls squarely in the "disruptive" category

identified in *DeJordy*. It is not, like the discovery request permitted in *Missouri DNR*, a limited subpoena duces tecum seeking the production of a narrowly defined set of documents. Instead, NSP must designate and prepare numerous employees to testify on six complex and wide-ranging topics. (*See* Filing No. 126-1 - Pl. Subpoena and Filing No. 126-3 - Dec'l of Mark Boyer). Mark Boyer, NSP's general counsel, notes, "[i]n addition to the time spent in deposition and their travel time, the Patrol estimates each individual will spend five (5) hours preparing for the deposition." (Filing No. 126-3 - Dec'l of Mark Boyer at 3). As *DeJordy* explained, a subpoena that compels a government official to provide deposition testimony "in [an] official capacity . . . 'interfere[s] with the public administration.'" *DeJordy*, 675 F.3d at 1103 (quoting *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir.1989)). In short, a subpoena that requires an agency to provide deposition testimony is compelled, by judicial decree, to "act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id*. Put another way, the autonomy of an agency subpoenaed to provide deposition testimony is obviously threatened. *See id*. at 1103 (recognizing the "potential for severe interference with government functions" posed by some third-party discovery request to be "apparent"). *Contra Missouri DNR*, 105 F.3d at 436 (Sovereign immunity did not preclude subpoena duces tecum at issue there because the agency had not "shown how production of [the requested] documents infringe[d] on the State of Missouri's autonomy."). And NSP must expand considerable resources preparing multiple employees to testify at the deposition. (*See* Filing No. 126-3 - Dec'l of Mark Boyer). This threat to the autonomy of a Nebraska

agency and the aforementioned expenditures of time and treasure implicates the public policy concerns that justify the protection from suit afforded by sovereign immunity. *See DeJordy*, 675 F.3d at 1105; *see also Alden v. Maine,* 527 U.S. 706, 748–751 (1999).

Because the 30(b)(6) subpoena at issue here is disruptive and distinguishable, the rule of *DeJordy*, not *Missouri DNR*, controls. This Court should apply *DeJordy*, find that NSP is shielded from that disruptive third-party subpoena by Nebraska's sovereign immunity, and therefore grant NSP's motion to quash.

## II. IF *MISSOURI DNR* CONTROLS, THE EIGHTH CIRCUIT SHOULD OVERRULE IT.

If the Court concludes that *Missouri DNR* is controlling, that conclusion is inconsistent with generally applicable principles of sovereign immunity. Thus, if *Missouri DNR* controls here, the Eighth Circuit should overrule it.[4]

Sovereign immunity categorically shields NSP from third-party discovery requests. NSP, an instrumentality of the State of Nebraska, enjoys the full breadth of protection provided by Nebraska's sovereign immunity. *Steckelberg v. Rice*, 184 F. Supp. 3d 746, 754 (D. Neb. 2016), *aff'd*, 878 F.3d 630 (8th Cir. 2017); *accord Davis v. State,* 297 Neb. 955, 982, 902 N.W.2d 165, 188 (2017). That immunity is full immunity from suit, which necessarily encompasses discovery and related processes. *Burke v. Bd. Of Trustees of Nebraska State Colleges*, 302 Neb. 494, 501, 924 N.W.2d 304, 310 (2019). *Cf. DeJordy*, 675 F.3d at 1104–06; *Jones*, 49 F.4th at 514. If NSP were a party,

---

[4] NSP acknowledges that this Court cannot overrule or disregard controlling Eighth Circuit precedent. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). NSP presents this argument to clearly preserve the issue.

no employee or representative of NSP could be compelled to testify at a 30(b)(6) deposition on its behalf; indeed, NSP would be entitled to dismissal. *See Jones*, 49 F.4th at 514 ("Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery."). And, as the Fifth Circuit recently explained in *Jones*, sovereign immunity principles apply with no less force when a State is a third party rather than a named defendant. *Id.* at 514.

More recent authorities illustrate *Missouri DNR*'s error. As discussed above, in *DeJordy*, the Eighth Circuit declined to apply *Missouri DNR*'s when considering the propriety of a third-party discovery request directed to a tribal sovereign shielded by tribal immunity (an analogue of State sovereign immunity). 675 F.3d at 1104–05. *DeJordy* recognized the obvious "potential for severe interference with government functions" if a sovereign entity could be commanded by a federal court to answer third-party discovery. *Id.* at 1103. Additionally, in *DeJordy*'s wake, one member of the Eighth Circuit has questioned *Missouri DNR*'s continuing validity, expressing "doubts [as to] whether, under basic sovereign-immunity principles, a state may be haled into federal court solely for the purpose of answering a third-party subpoena." *McGehee v. Nebraska Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020), *reh'g granted and opinion vacated* (Oct. 5, 2020), *on reh'g*, 987 F.3d 785 (8th Cir. 2021) (Stras, J., concurring). After all, it would be awkward to hold that States are entitled to less immunity as sovereigns than tribes. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011) ("The scope of tribal immunity, however, is [usually] more limited [than state sovereign immunity]."); *see also DeJordy*, 675 F.3d

at 1104.

The Fifth Circuit's *Jones* opinion, which canvassed authority from across the nation, also strongly suggests that *Missouri DNR* is an aberration. *See Jones*, 49 F.4th at 517 ("[O]ur sister circuits agree that where a sovereign is otherwise entitled to immunity, that immunity extends to third-party subpoenas."). Indeed, as *Jones* expressly noted, the great weight of authorities canvassed—including *DeJordy*—"cast[] considerable doubt" on *Missouri DNR's* claim that there is "no authority" for the proposition that sovereign immunity shields state government entities from third-party discovery requests. *Id.* at 518 n.12. The *Jones* decision has been subsequently reinforced by the Fifth Circuit and district courts within that circuit. *See In re Paxton*, 60 F.4th 252 (5th Cir. 2023); *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 21758612 (N.D. Tex. Dec. 6, 2022); *Thompson v. Richter*, No. 7:22-CV-00014-O, 2023 WL 7986341 (N.D. Tex. Nov. 17, 2023); *In re Matter of the Application of B&c Kb Holding Gmbh for an Ord. To Take Discovery Pursuant To 28 U.S.C. § 1782 From the Tchr. Ret. Sys. Of Texas*, No. 1:23-MC-00529, 2023 WL 7926815, at *1 (W.D. Tex. Nov. 16, 2023).

Other courts have also considered *Missouri DNR* and found its reasoning or application lacking. *See*, e.g., *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014); *Felix v. Cnty. of Nassau*, 344 F.R.D. 441, 446 (E.D.N.Y. 2023). In *Bonnet*, the Tenth Circuit concluded that tribal sovereignty protects tribal sovereigns[5] from third-party discovery because tribal sovereignty makes them

---

[5] But not necessarily tribal officers, *see Bonnet*, 741 F.3d at 1161–62.

immune to "suit," a "suit" includes any "judicial process," and a third-party subpoena duces tecum is a "form of judicial process." *Id.* at 1160. In reaching that conclusion, *Bonnet* expressly rejected the discovery-seeking plaintiffs' reliance on *Missouri DNR*. *Id.* at 1161. Furthermore, the Tenth Circuit signaled that it was likely, under its circuit precedent defining a "suit" and "judicial process," that State sovereign immunity "shield[s] a state agency from discovery in federal court." *Id.* (citing *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922 (10th Cir. 1996) and *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007)).

A similar outcome occurred in *Felix*. There, the Eastern District of New York granted the New York Attorney General's motion to quash a third-party subpoena on sovereign immunity grounds. *Felix*, 344 F.R.D. at 445–46. *Felix* explained that sovereign immunity "applies to more than to just liability," noting that the "the doctrine obtains in all proceedings where the result could be an order restraining the moving governmental entity or requiring it to act." *Id.* at 444. Indeed, "'the very object and purpose of the eleventh amendment'"—which was enacted to confirm that the federal constitution did not abrogate the inherent sovereign immunity enjoyed by States—was to "'to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties.'" *Id.* at 445 (quoting *Ex parte Ayers*, 123 U.S. 443, 505 (1887)). *Felix* went on to consider *Missouri DNR*, *DeJordy*, and *Jones*, ultimately echoing Jones's "considerable doubt" that the result in *Missouri DNR* can be squared with generally applicable sovereign immunity principles. *Id* at 445–46.

The weight of authority, both within the Eighth Circuit and elsewhere, indicates that *Missouri DNR* was wrongly decided and should be overruled. NSP respectfully requests that even if this Court is constrained to apply *Missouri DNR* as controlling precedent, the Court recognize in its opinion the various authorities that explain why *Missouri DNR* is incongruent with sovereign immunity principles and expressly acknowledge the wisdom of overruling it.

## CONCLUSION

Because NSP is immune from Plaintiff's subpoena, the Court should grant the motion to quash and relieve NSP from any obligation flowing therefrom.

DATED this 30th day of January 2024.

        **NEBRASKA STATE PATROL, a Third Party.**

By:    MICHAEL T. HILGERS, #24483
        *Nebraska Attorney General*

By:    ZACHARY A. VIGLIANCO, #27825
        *Deputy Solicitor General*

By:    *s/ Erik W. Fern*
        Erik W. Fern, #23733
        *Assistant Attorney General*

        OFFICE OF THE ATTORNEY GENERAL
        2115 State Capitol
        Lincoln, Nebraska 68509
        Phone: (402) 471-1830
        Fax: (402) 471-4725
        erik.fern@nebraska.gov
        *Attorneys for Nebraska State Patrol.*

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d), the undersigned hereby certifies that the foregoing principal brief contains 2,996 words (including the caption, headings, footnotes, and quotations) in compliance with said rule. The undersigned utilized the word count function of Microsoft Word for Microsoft Office 365 that was applied to include all text.

                                         By:    *s/ Erik W. Fern*
                                                      Erik W. Fern, #23733
                                                      *Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2024, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, causing notice of such filing to be served upon all parties registered on the CM/ECF system as follows:

Maren Lynn Chaloupka
Chaloupka Law LLC
1906 Broadway
P.O. Box 1724
Scottsbluff, NE 69393-1724
mlc@chaloupkalaw.net

Colby C. Vokey
Law Firm of Colby C. Vokey PC
6924 Spanky Branch Court
Dallas, TX 75248-1450
vokeylaw@colbyvokey.com

Robert S. Keith
Engles Ketcham Olson
Keith, P.C.
1700 Farnam Street
1350 Woodmen Tower
Omaha, NE 68102
rkeith@ekoklaw.com

Jeffery R. Kirkpatrick, #21280
Governmental Law, LLC
8040 Eiger Drive, Suite B
Lincoln, NE 68516
jeff@nrmainc.info

Ryan M. Kunhart
Alison C. Clark
Dvorak Law Group, LLC
9500 W. Dodge Rd., Ste. 100
Omaha, NE 68114
rkunhart@ddlawgroup.com
aclark@ddlawgroup.com

By:  *s/ Erik W. Fern*
Erik W. Fern, #23733
*Assistant Attorney General*