IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRYAN S. MICK, Personal Representative of the Estate of PRINT ZUTAVERN, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>DEPUTY BARRETT GIBBONS, in his individual and official capacities; DEPUTY LAWRENCE STUMP, in his individual and official capacities; SHERIFF DAN OSMOND, in his individual and official capacities; COUNTY OF CUSTER, a Nebraska political subdivision, d/b/a CUSTER COUNTY SHERIFF'S OFFICE; TRP. BRANDON WILKIE, in his individual capacity; and JOHN/JANE DOE, a training supervisor of the Nebraska State Patrol, in his/her individual and official capacities,<br><br>Defendants. | Case No. 4:22-cv-3025<br><br><br>**PLAINTIFF'S BRIEF OPPOSING NEBRASKA STATE PATROL'S MOTION TO QUASH** |

Bryan S. Mick, Personal Representative of the Estate of Print Zutavern, Deceased, Plaintiff in the above-captioned matter, by and through his counsel of record, submits this Brief Opposing (non-party) Nebraska State Patrol's Motion to Quash:

## PROCEDURAL BACKGROUND

The negotiations for the scope of the 30(b)(6) deposition(s) began in October 2023. Emails provided in the Evidence Index show that the undersigned communicated multiple times by phone and by email with Jessica Forch, then-counsel for the Nebraska State Patrol. On Forch's suggestion, the undersigned reviewed WILKIE's training logs to identify particular relevant trainings he had undertaken, to assist NSP in identifying the right witness(es) to designate.

During these communications, no one suggested that sovereign immunity should block this discovery from occurring. Even when Assistant Attorney General Erik Fern (counsel for NSP in this Motion) joined the discussion on November 1, his concern was scheduling, not sovereign immunity. Something happened after that time, and NSP first raised its sovereign immunity argument on January 4, 2024.

## STANDARD OF REVIEW

As NSP notes, "Discovery matters, like a motion to quash, are committed to the sound discretion of the trial court."[1] District courts in the Eighth Circuit are "duty bound to follow precedential decisions of the Eighth Circuit Court of Appeals."[2] The Eighth Circuit has recognized the principle that "where a precedent … has direct application in a case, [the court] should follow it, even if a later decision arguably undermines some of its reasoning."[3]

---

[1] *United States v. Adcock*, 558 F.2d 397, 406 (8th Cir. 1977).

[2] *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (district courts are "bound … to apply the precedent of [the Eighth] Circuit"); *Valspar Corp. v. PPG Indus., Inc.*, 2017 WL 3382063 at *3 (D. Minn. 2015) (district courts are bound by circuit court decisions "until and unless the Supreme Court (or the circuit court sitting en banc) says otherwise," including even if it appears the circuit court decision "conflicts with Supreme Court precedent"); *United States v. Wade*, 792 F. Appx. 417 (8th Cir. 2020) (*per curiam*) (the Eighth Circuit itself is "bound by a prior panel's decision … [e]ven though there has been recent discussion about the lasting viability [of Eighth Circuit precedent] in light of recent Supreme Court precedent"); *Pereida v. Barr*, 916 F.3d 1128, 1133 (8th Cir. 2019) (Eighth Circuit is "bound by [circuit] precedent absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court regarding this unique situation").

[3] *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir 2018) (*citing* *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

## ARGUMENT

### I.

### CIRCUIT PRECEDENT CONTROLS THE OUTCOME OF THIS MOTION

Sovereign immunity does not block a party from seeking discovery from any state agency. As a practical matter, parties serve non-party subpoenas on the Nebraska State Patrol regularly for records, reports, photographs and video footage, and NSP responds. In fact, *in this case last month*, NSP provided a response to Plaintiff's Rule 45 Subpoena Duces Tecum without objection and without claiming that sovereign immunity shielded it from responding to Plaintiff's subpoena.[4]

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportionate to the needs of the case." Discovery includes depositions.[5] Rule 30(b)(6) provides for depositions of organizational representatives. It requires the organization to designate people "who consent to testify on its behalf" and who "must testify about the information known or reasonably available to the organization."[6]

This case does not implicate tribal sovereignty. With that in mind, there is no evidence that *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434 (8th Cir. 1997) (hereinafter "*Missouri DNR*"), is on the cusp of reversal, especially for cases that do not implicate tribal sovereignty. This case has remained "good law" for over 25 years. NSP does not advise of a particular case pending before the Circuit that challenges whether *Missouri DNR* is still effective precedent. The cases cited by

---

[4] NSP's response to Plaintiff's Rule 45 subpoena duces tecum is provided in the Evidence Index.

[5] *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 2016 WL 10674240 (N.D. Ind. 2016).

[6] FED. R. CIV. P. 30(b)(6).

NSP that are described as challenging the validity of that precedent are, to be clear, cases focusing on tribal sovereignty.

This Court addressed, and rejected, the Attorney General's argument in 2019 in the case of *McGehee v. Nebraska Dept. of Corr. Servs.*[7] The plaintiffs were a group of Arkansas death row inmates. They sought to use a subpoena to obtain evidence of communications and documents between NDCS and certain pharmacies, relative to those pharmacies' decision to supply fentanyl for use in Nebraska executions. The Attorney General objected, arguing sovereign immunity and citing the cases provided in NSP's Brief herein.

> This Court analyzed the validity of *Missouri DNR*, finding:
>
> The holding in *Missouri DNR* remains good law in the Eighth Circuit and is binding in this case. NDCS nevertheless argues that the court in *Missouri DNR* "strongly suggested" that the Eleventh Amendment would bar a subpoena that "infringes on a State's autonomy or threatens its treasury." NDCS Br. at 10-11, ECF No. 16 (*quoting Missouri DNR*, 105 F.3d at 436). However, the holding in *Missouri DNR* does not support this position. While the Eighth Circuit recognized that the Missouri DNR failed to show that the subpoenas infringed on the State of Missouri's autonomy or pocketbook, the court stated that "there is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *Missouri DNR*, 105 F.3d at 436.
>
> Despite the Eighth Circuit's unqualified language, NDCS argues that the tea leaves of more recent precedent call into question the holding in *Missouri DNR*. NDCS relies on the Eighth Circuit's decision on tribal sovereign immunity in *Alltel Comm., LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012). In *Alltel*, the Oglala Sioux Tribe moved to quash third-party subpoenas on the basis of tribal immunity. *Id.* at 1102. The district court denied the motion to quash, relying on the Eighth Circuit's decision in *Missouri DNR*. *Id.* at 1104. The Eighth Circuit held that the district court's reliance was misplaced because "[a]lthough Eleventh Amendment precedents are instructive, tribal immunity 'is not congruent with that which the Federal Government, or the States, enjoy.'" *Id.* (*quoting Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 890. Accordingly,

---

[7] *McGehee v. Nebraska Dept. of Corr. Servs.*, 2019 WL 1227928 (D. Neb. 2019) (Smith Camp, J.).

the court "declined to decide whether sovereign immunity provided states with protection against 'disruptive third-party subpoenas that would clearly be barred in a State's own courts.'" *In re Mo. Dep't of Corr*, 661 Fed. Appx. 453, 456 (8th Cir.), *reh'g granted and opinion vacated* (Sept. 13, 2016), *on reh'g sub nom.* ***In re Mo. Dep't of Corr.***, 839 F.3d 732 (8th Cir. 2016) (*quoting* *Alltel*, 675 F.3d at 1104-05).

The Court cannot read *Alltel* as overruling or questioning the court's holding in *Missouri DNR*. Other states' correctional departments subpoenaed by the Plaintiffs in this case have raised this argument and each court, citing to Eighth Circuit precedent, has refused to hold that sovereign immunity bars the subpoenas. *See McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18 slip op. at 1 (N.D. Fla. Feb. 2, 2019); *McGehee v. Missouri Dep't of Corr.*, 2:18-mc-04138, ECF No. 21 slip op. at 10, (W.D. Mo. Jan 15, 2019). The Court, following binding Eighth Circuit precedent, agrees with its sister courts that sovereign immunity does not categorically bar the subpoenas in this case.[8]

The Nebraska Attorney General appealed that decision. The United States Court of Appeals for the Eighth Circuit did not address the merits of its argument, because the dispute was rendered moot by a Nebraska Supreme Court decision ordering the Department to release the documents in question, leaving no relief to grant. But: before the Circuit requested briefing on mootness and then concluded that the dispute was moot, the court "concluded it did not affect the outcome because we were bound by the panel's decision in *Missouri DNR*."[9]

This Court is bound by that panel decision as well. It is not bound by *Felix v. County of Nassau*[10], the opinion from the United States District Court for the Eastern District of New York cited by NSP. This Court is not in the Fifth Circuit, so it is not bound by *Russell v. Jones*[11], another

---

[8] *McGehee v. Nebraska Dept. of Corr. Servs.*, 2019 WL 1227928 at *4.

[9] *See McGehee v. Nebraska Dep't of Corr. Servs.*, 987 F.3d 785, 787 (8th Cir. 2021) (unanimous decision).

[10] *Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023).

[11] *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).

case relied upon by NSP. It appears that NSP hopes that the Eighth Circuit will take up this issue and follow the Fifth Circuit – but it has not done so yet.[12]

As an aside, NSP has not inaccurately quoted *Russell v. Jones* in excerpting its statement of "sovereign immunity is an immunity from suit (including discovery), not just liability." But the alleged support for that statement does not fit here. The United States Supreme Court decision that the Fifth Circuit cited as support for that statement, *Mitchell v. Forsyth*[13], arose from a case against a former United States Attorney General, and addresses how qualified immunity protects governmental defendants from disruptive discovery. We thus would question the strength of *Mitchell* as support for the proposition that a non-party state agency is completely immune from responding to a deposition notice or, even more sweepingly, a subpoena duces tecum for records.

It is unclear how far the Nebraska State Patrol envisions its proposed ban on participating in discovery to extend – but the logical breadth of its proposed ban would put an end to obtaining discoverable (and necessary) evidence from all state agencies, from the Patrol to the Department of Health & Human Services to the Department of Correctional Services and every other agency of the State. That result would badly compromise the completeness and thus the accuracy of information available in the justice system:

- It would clash with NEB. REV. STAT. § 84-712, Nebraska's public information statute.
- It would allow NSP to refuse to produce troopers who investigated crashes for depositions.
- The Department of Correctional Services could refuse to produce documents or witnesses in federal civil rights actions against its employees. It could refuse a subpoena for a plaintiff's inmate file.

---

[12] Perhaps there is an organizational initiative among different states' attorneys general to change the interpretation of sovereign immunity, such that suddenly this issue is arising in multiple courts seemingly all at once.

[13] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

- The Nebraska Department of Transportation could refuse to produce evidence (documentary, photographic or testimonial) of road construction sites where crashes occur, even where NDOT is not the defendant.
- In cases alleging bad faith practices by insurers, the Nebraska Department of Insurance could refuse to produce evidence (documentary, photographic or testimonial) relating to a problem insurer.
- The Nebraska Law Enforcement Training Center could refuse to produce evidence relating to the training history of an officer who participated in a wrongful conviction.
- The Nebraska Department of Health & Human Services could refuse to produce records or testimony regarding licensed facilities, such as inspection reports on privately-owned nursing homes and mental health facilities. It could refuse to produce records or testimony regarding a caseworker who is sued in a civil rights action.

NSP's requested outcome would shield from discovery evidence held by the Nebraska Equal Opportunity Commission, the Nebraska Department of Labor, the Nebraska Crime Commission – all of that evidence would be lost to this sweeping interpretation of "sovereign immunity."

Which may be what NSP and the Office of the Attorney General want, but it is not supported by the Eighth Circuit and it would critically wound truth-seeking and integrity in the development and presentation of evidence. We ask this Court to turn away from that disastrous outcome.

II.

### THE SUBJECTS OF INQUIRY IN THE SUBPOENA ARE PROPORTIONAL TO THE HARM AT ISSUE

Rule 30(b)(6) deposition notices typically identify a number of topics of inquiry, which often necessitate the designation of multiple witnesses. "The more complex the case, the greater the number of topics to be explored during the deposition and the greater number of witnesses."[14] If each witness were counted separately, a party could easily exhaust the number of allowable

---

[14] *Duran v. Sara Lee Corp.*, 2013 WL 12308200 at *2 (W.D. Mich. 2013).

depositions in one or two 30(b)(6) depositions. "The Advisory Committee Notes make clear that the drafters intended to avoid that problem by counting a 30(b)(6) deposition as a single deposition, regardless of how many individuals were required to be designated to comply with a 30(b)(6) notice."[15]

To comply with Rule 30(b)(6), the organizational deponent "has an affirmative duty to make available 'such number of persons as will' be able 'to give complete, knowledgeable, and binding answers' on its behalf."[16] "Because of this obligation, and because it is rare for one employee to have personal knowledge of everything known to a corporation, it is not unusual for a 30(b)(6) deposition to involve extensive preparation and multiple witnesses."[17]

We read the Affidavit of Mark Boyer to argue, in summary, not that the topics of the 30(b)(6) subpoena are inappropriate; but that producing five witnesses is too much trouble. Our blunt response is that this case is not about a twisted ankle or some other *de minimis* injury: it is about the death of an unarmed husband and father who was shot, at a distance of 3 feet, by a Nebraska State Patrol employee. Despite its non-party status, NSP has an affirmative duty to prepare the designees, however many, to the extent matters are reasonably available, whether from documents, past employees or other sources.[18]

---

[15] *Id.*

[16] *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).

[17] *See Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 214); *In re Weatherford Int'l Securities Litig.*, 2013 WL 4505259 at *3 (S.D.N.Y. 2013); Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment.

[18] *See Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2009 WL 773344 (S.D.N.Y. 2009).

*Wulz v. Bank of China, Ltd.*[19] arose from a terrorist bombing in Tel Aviv, Israel. Four family members of a victim who died in the blast sued the Bank of China, alleging it had provided material support and resources to the terrorists. The plaintiffs noticed a 30(b)(6) deposition of a non-party Israeli bank, seeking testimony on a variety of topics that were germane to the funding of the terrorists. The Israel bank moved to quash, claiming that the subpoena created an undue burden on its organization because all of the individuals with relevant information about the challenged wire transfers resided or worked in Jerusalem.

The United States District Court for the Southern District of New York rejected this argument. It held that

> Even if [the Israeli bank] is a non-party witness and all of the documents or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an undue burden when weighed against BOC's need for the testimony. A person in New York can easily be educated by a person in Israel by telephone, email or videoconference and relevant documents can easily be transmitted on a single flash drive or CD–ROM. Further, in the age of videoconferencing, [The Israeli bank] can avoid the burden of educating a New York employee altogether by agreeing to a deposition by video, to which BOC has consented.[20]

The court noted that the issue of the scienter of the Bank of China was "critical to this case," and thus the Israeli bank's documents and testimony were "directly relevant to the claims and defenses."[21] For all of those reasons, the court denied the non-party Israeli bank's motion to quash.

Its reasoning applies here. The harm at issue in this case was existential, ending one life and changing the lives of PRINT's family. WILKIE has asserted that his actions were reasonable, and will move for qualified immunity. To survive that motion, Plaintiff must show that WILKIE's

---

[19] *Wulz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014).

[20] *Id.* at 99.

[21] *Id.* at 102.

actions were objectively unreasonable.[22] How WILKIE was trained may well reveal evidence that contradicts WILKIE's assertion that his actions, in shooting an unarmed man from a distance of 3 feet, were objectively reasonable. Thus what Plaintiff now seeks in this 30(b)(6) deposition is evidence about how WILKIE was trained, in matters that directly bear on the claims and defenses in this case: use of force, mental health, police service dogs, barricaded subjects and Special Weapons and Tactics (SWAT).

We do not disagree that it is a lot of work to prepare five witnesses, and it will take time for agency counsel for this non-party to observe their depositions (it is not clear whether both agency counsel Boyer and Assistant Attorney General Fern will attend the 30(b)(6) deposition). If anything, however, NSP has more of a relationship to WILKIE than the Israeli bank had to the defendant of *Wulz*, and the individuals with knowledge are not in Jerusalem. This is not a disproportionate burden, given the harm to Plaintiff and what is now at stake.

## CONCLUSION

For these reasons, Plaintiff asks this Court to DENY the Nebraska State Patrol's Motion to Quash.

>BRYAN S. MICK, Personal Representative of the Estate of PRINT ZUTAVERN, Deceased, Plaintiff,
>
>By: /s/ *Maren Lynn Chaloupka*
>Maren Lynn Chaloupka – NSBA # 20864
>Chaloupka Law LLC
>1906 Broadway
>P.O. Box 1724
>Scottsbluff, Nebraska 69363-1724
>(308) 270-5091
>mlc@chaloupkalaw.net

---

[22] *Shelton v. Stevens*, 964 F.3d 747, 762 (8th Cir. 2020).

-AND-

Colby C. Vokey – TX State Bar # 24043391
Law Firm of Colby C. Vokey PC
6924 Spanky Branch Court
Dallas, TX  75248-1450
vokeylaw@colbyvokey.com

## CERTIFICATE OF COMPLIANCE

I hereby certify this document complies with NEB. CIV. R. 7.1(d)(1). It contains 3148 words, as calculated by the word-count function of Word, including all text, the caption, headings, footnotes, and quotations.

/s/ Maren Lynn Chaloupka

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument has been sent via email on this 1st day of February 2024, to the following:

Jeffery R. Kirkpatrick
Governmental Law, LLC
8040 Eiger Drive
Suite B
Lincoln, NE 68516
jeff@nrmainc.info

Erik W. Fern
Office of the Attorney General
2115 State Capitol
Lincoln, NE  68509
erik.fern@nebraska.gov

Ryan M. Kunhart
Claire E. Monroe
Alison C. Clark
Dvorak Law Group, LLC
9500 W. Dodge Road, Suite 100
Omaha, NE  68114
rkunhart@ddlawgroup.com
cmonroe@ddlawgroup.com
aclark@ddlawgroup.com

/s/ Maren Lynn Chaloupka