IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRYAN S. MICK, Personal Representative of the Estate of PRINT ZUTAVERN, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>DEPUTY BARRETT GIBBONS, in his individual and official capacities; DEPUTY LAWRENCE STUMP, in his individual and official capacities; SHERIFF DAN OSMOND, in his individual and official capacities; COUNTY OF CUSTER, a Nebraska political subdivision, d/b/a CUSTER COUNTY SHERIFF'S OFFICE; TRP. BRANDON WILKIE, in his individual capacity; and JOHN/JANE DOE, a training supervisor of the Nebraska State Patrol, in his/her individual and official capacities,<br><br>Defendants. | Case No. 4:22-cv-3025<br><br><br>**PLAINTIFF'S BRIEF OPPOSING NEBRASKA STATE PATROL'S OBJECTION** |

Bryan S. Mick, Personal Representative of the Estate of Print Zutavern, Deceased, Plaintiff in the above-captioned matter, by and through his counsel of record, submits this Brief Opposing (non-party) Nebraska State Patrol's Objection to Magistrate Judge's Order on Motion to Quash:

### INTRODUCTION

This may seem like a routine discovery dispute; it is not. After the non-party Nebraska State Patrol initially voiced no objection to the deposition of its representatives, the Office of the Attorney General abruptly changed that position. It has staked out a goal of overturning 24-year-old Eighth Circuit precedent, and joining the outlier United States Court of Appeals for the Fifth Circuit in choking off all discovery from all state agencies, in any type of case.

## PROCEDURAL BACKGROUND

What NSP characterizes as "severe interference with government functions" is a Notice of 30(b)(6) Deposition in a wrongful death/civil rights case. Plaintiff asked NSP to designate the person or persons most knowledgeable not in all training for troopers, but in just six discrete areas of training that are germane to this case:

a. Responding to persons experiencing a mental health crisis;

b. Response to and resolution of events involving barricaded subjects/suspects;

c. Use of force (non-lethal and lethal);

d. Police service dogs and dog handling, including in tactical events;

e. Special Weapons and Tactics and/or SWAT; and

f. Video recording devices (body-worn, dashboard, robot).

This is not for training for all time throughout the NSP's existence; it is for training effective as of February 23, 2020. This request apparently breaches NSP's low threshold for "severe interference with government functions."

The negotiations for the scope of the 30(b)(6) deposition(s) began in October 2023. Emails provided in the Evidence Index Opposing NSP's Motion to Quash show that the undersigned communicated multiple times by phone and by email with Jessica Forch, then-counsel for the Nebraska State Patrol. On Forch's suggestion, the undersigned reviewed WILKIE's training logs to identify particular relevant trainings he had undertaken, to assist NSP in identifying the right witness(es) to designate.

During these communications, no one suggested that sovereign immunity should block this discovery from occurring. Even when Assistant Attorney General Erik Fern (counsel for NSP in this Motion) joined the discussion on November 1, his concern was scheduling, not sovereign

immunity. Something happened after that time, and NSP first raised its sovereign immunity argument on January 4, 2024.

"All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing to bear that burden."[1] If the task of producing herein really is unusual, NSP could have sought a protective order to invoke the Court's review of whether producing five employees on limited subjects is unfair. NSP could have negotiated with the undersigned to space out the timing of the deposition so that Mr. Boyer did not have to miss a whole day to two days of other work in order to accompany Mr. Fern to this deposition. But instead, NSP seeks to not just block the discovery altogether in this case, but to establish new precedent that no state agency need ever participate in discovery again.

## STANDARD OF REVIEW

As NSP notes, "discovery matters, like a motion to quash, are committed to the sound discretion of the trial court."[2] District courts in the Eighth Circuit are "duty bound to follow precedential decisions of the Eighth Circuit Court of Appeals."[3] The Eighth Circuit has recognized

---

[1] *Peetz v. Genentech, Inc.*, 2013 WL 3812682 (D. Neb. 2013).

[2] *United States v. Adcock*, 558 F.2d 397, 406 (8th Cir. 1977).

[3] *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (district courts are "bound ... to apply the precedent of [the Eighth] Circuit"); *Valspar Corp. v. PPG Indus., Inc.*, 2017 WL 3382063 at *3 (D. Minn. 2015) (district courts are bound by circuit court decisions "until and unless the Supreme Court (or the circuit court sitting en banc) says otherwise," including even if it appears the circuit court decision "conflicts with Supreme Court precedent"); *United States v. Wade*, 792 F. Appx. 417 (8th Cir. 2020) (*per curiam*) (the Eighth Circuit itself is "bound by a prior panel's decision … [e]ven though there has been recent discussion about the lasting viability [of Eighth Circuit precedent] in light of recent Supreme Court precedent"); *Pereida v. Barr*, 916 F.3d 1128, 1133 (8th Cir. 2019) (Eighth Circuit is "bound by [circuit] precedent absent *en banc*

the principle that "where a precedent ... has direct application in a case, [the court] should follow it, even if a later decision arguably undermines some of its reasoning."[4]

## ARGUMENT

## I.

### CIRCUIT PRECEDENT CONTROLS THE OUTCOME OF THIS OBJECTION

Sovereign immunity does not block a party from seeking discovery from any state agency. As a practical matter, parties serve non-party subpoenas on the Nebraska State Patrol regularly for records, reports, photographs and video footage, and NSP responds. In fact, *in this very case last month*, NSP complied with Plaintiff's Rule 45 Subpoena Duces Tecum without objection and without claiming that sovereign immunity shielded it from responding to Plaintiff's subpoena.[5]

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportionate to the needs of the case." Discovery includes depositions.[6] Rule 30(b)(6) provides for depositions of organizational representatives. It requires the organization to designate people "who consent to testify on its

---

reconsideration or a superseding contrary decision by the Supreme Court regarding this unique situation").

[4] *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir 2018) (*citing* *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

[5] NSP's response to Plaintiff's Rule 45 subpoena duces tecum is provided in our Evidence Index Opposing NSP's Motion to Quash. NSP has not disputed that it complied with this subpoena without objection or any claim that sovereign immunity spared it from searching records to comply with Rule 45.

[6] *Timm v. Goodyear Dunlop Tires North America, Ltd.*, 2016 WL 10674240 (N.D. Ind. 2016).

behalf" and who "must testify about the information known or reasonably available to the organization."[7]

This case does not implicate tribal sovereignty. With that in mind, there is no evidence that *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434 (8th Cir. 1997) (hereinafter "*Missouri DNR*"), is on the cusp of reversal, especially for cases that do not implicate tribal sovereignty, unless the Circuit accepts an interlocutory appeal in this case. *Missouri DNR* has remained "good law" for nearly a quarter-century. The Office of the Nebraska Attorney General does not advise of any other particular case pending before the Circuit that challenges whether *Missouri DNR* is still effective precedent – it wants this case to be "The Case." The cases cited by NSP that are described as challenging the validity of that precedent are, to be clear, cases focusing on tribal sovereignty.

This Court addressed, and rejected, the Attorney General's argument in 2019 in the case of *McGehee v. Nebraska Dept. of Corr. Servs.*[8]. The plaintiffs were a group of Arkansas death row inmates. They sought to use a subpoena to obtain evidence of communications and documents between NDCS and certain pharmacies, relative to those pharmacies' decision to supply fentanyl for use in Nebraska executions. The Attorney General objected, arguing sovereign immunity and citing the cases provided in NSP's Brief herein.

> This Court analyzed the validity of *Missouri DNR*, finding:
>
> The holding in *Missouri DNR* remains good law in the Eighth Circuit and is binding in this case. NDCS nevertheless argues that the court in *Missouri DNR* "strongly suggested" that the Eleventh Amendment would bar a subpoena that "infringes on a State's autonomy or threatens its treasury." NDCS Br. at 10-11, ECF No. 16 (*quoting Missouri DNR*, 105 F.3d at 436). However, the holding in *Missouri DNR* does not support this position. While the Eighth Circuit

---

[7] FED. R. CIV. P. 30(b)(6).

[8] *McGehee v. Nebraska Dept. of Corr. Servs.*, 2019 WL 1227928 (D. Neb. 2019) (Smith Camp, J.).

recognized that the Missouri DNR failed to show that the subpoenas infringed on the State of Missouri's autonomy or pocketbook, the court stated that "there is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *Missouri DNR*, 105 F.3d at 436.

Despite the Eighth Circuit's unqualified language, NDCS argues that the tea leaves of more recent precedent call into question the holding in *Missouri DNR*. NDCS relies on the Eighth Circuit's decision on tribal sovereign immunity in *Alltel Comm., LLC v. DeJordy*, 675 F.3d 1100, 1104 (8th Cir. 2012). In *Alltel*, the Oglala Sioux Tribe moved to quash third-party subpoenas on the basis of tribal immunity. *Id.* at 1102. The district court denied the motion to quash, relying on the Eighth Circuit's decision in *Missouri DNR*. *Id.* at 1104. The Eighth Circuit held that the district court's reliance was misplaced because "[a]lthough Eleventh Amendment precedents are instructive, tribal immunity 'is not congruent with that which the Federal Government, or the States, enjoy.'" *Id.* (*quoting* *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 890. Accordingly, the court "declined to decide whether sovereign immunity provided states with protection against 'disruptive third-party subpoenas that would clearly be barred in a State's own courts.'" *In re Mo. Dep't of Corr*, 661 Fed. Appx. 453, 456 (8th Cir.), *reh'g granted and opinion vacated* (Sept. 13, 2016), *on reh'g sub nom.* *In re Mo. Dep't of Corr.*, 839 F.3d 732 (8th Cir. 2016) (*quoting Alltel*, 675 F.3d at 1104-05).

The Court cannot read *Alltel* as overruling or questioning the court's holding in *Missouri DNR*. Other states' correctional departments subpoenaed by the Plaintiffs in this case have raised this argument and each court, citing to Eighth Circuit precedent, has refused to hold that sovereign immunity bars the subpoenas. *See McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18 slip op. at 1 (N.D. Fla. Feb. 2, 2019); *McGehee v. Missouri Dep't of Corr.*, 2:18-mc-04138, ECF No. 21 slip op. at 10, (W.D. Mo. Jan 15, 2019). The Court, following binding Eighth Circuit precedent, agrees with its sister courts that sovereign immunity does not categorically bar the subpoenas in this case.[9]

The Office of the Nebraska Attorney General appealed that decision. The dispute was rendered moot by a Nebraska Supreme Court decision ordering the Department to release the documents in question, leaving no relief to grant. But: before the Circuit requested briefing on mootness and then concluded that the dispute was moot, the court "concluded it did not affect

---

[9] *McGehee v. Nebraska Dept. of Corr. Servs.*, 2019 WL 1227928 at *4.

the outcome because we were bound by the panel's decision in *Missouri DNR*."[10] There were no dissents or concurrences from that opinion, from Judge Stras or any other jurist.

This Court is bound by that panel decision as well. It is not bound by *Felix v. County of Nassau*[11], the opinion from the United States District Court for the Eastern District of New York cited by the Office of the Nebraska Attorney General. This Court is not in the Fifth Circuit, so it is not bound by *Russell v. Jones*[12], another case relied upon by the Office of the Nebraska Attorney General. It appears that the Attorney General hopes that:

- the Eighth Circuit will concur that NSP is at true risk of not just routine non-party inconvenience, but "severe interference with governmental functions" (in NSP's words) and will take up NSP's interlocutory appeal[13]; and

- Judge Stras will be on the panel that hears its appeal; and

- Judge Stras will persuade the rest of the panel to overrule its own precedent and follow the Fifth Circuit's decision in *Russell*.

All of those things must happen in order for the Attorney General's prediction to come true, that the Circuit will abandon its own 24-year precedent in order to spare NSP from producing five out of 700+ employees to testify about training on six subjects that was effective on one day in recent history. We take the Attorney General's effort seriously nonetheless, because of the disastrous

---

[10] *See McGehee v. Nebraska Dep't of Corr. Servs.*, 987 F.3d 785, 787 (8th Cir. 2021) (unanimous decision).

[11] *Felix v. County of Nassau*, 344 F.R.D. 441 (E.D.N.Y. 2023).

[12] *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).

[13] We wonder whether there is an organizational initiative among different states' attorneys general to change the interpretation of sovereign immunity, such that suddenly this issue is arising in multiple courts seemingly all at once. So far, NSP has not denied that this is what is happening.

consequences for truth-seeking in the court system if all state agencies can now refuse to comply with subpoenas.

In our Brief Opposing NSP's Motion to Quash, we expressed concern about how far the Nebraska State Patrol envisions its proposed ban on participating in discovery to extend. In its Brief Supporting Objection, the Office of the Attorney General has done nothing to quell these concerns. Thus it appears that the intent of the Office of the Attorney General is to put an end to obtaining not just discoverable but necessary evidence from all state agencies, from the Patrol to the Department of Health & Human Services to the Department of Correctional Services and every other agency of the State.

That result would badly compromise the completeness and thus the accuracy of information available in the justice system. For example:

- It would clash with NEB. REV. STAT. § 84-712, Nebraska's public information statute.
- It would allow NSP to refuse to produce for depositions troopers who investigated crashes.
- The Nebraska Department of Transportation could refuse to produce evidence (documentary, photographic or testimonial) of road construction plans in contract disputes between construction contractors.
- In cases alleging bad faith practices by insurers, the Nebraska Department of Insurance could refuse to produce evidence (documentary, photographic or testimonial) relating to a problem insurer.
- The Nebraska Law Enforcement Training Center could refuse to produce evidence relating to the training history of an officer who participated in a wrongful conviction.
- The Department of Correctional Services could refuse to produce documents or witnesses in federal civil rights actions against its employees. It could refuse a subpoena for a plaintiff's inmate file.
- The Nebraska Department of Health & Human Services could refuse to produce records or testimony regarding licensed facilities, such as inspection reports on privately-owned nursing homes and mental health facilities. It could refuse to produce records or testimony regarding a caseworker who is sued in a civil rights action.

The Attorney General's requested outcome would shield from discovery evidence held by the Nebraska Equal Opportunity Commission, the Nebraska Department of Labor, the Nebraska Crime Commission – all of that evidence and evidence held by every other state agency would be lost to this sweeping interpretation of "sovereign immunity."

That apparently is what the Office of the Attorney General wants. But it is not supported by the Eighth Circuit, and that outcome would critically wound truth-seeking and integrity in the development and presentation of evidence. We ask this Court to turn away, and turn away forcefully, from that disastrous outcome.

As an aside, the Office of the Attorney General has not inaccurately quoted *Russell v. Jones* in excerpting its statement of "sovereign immunity is an immunity from suit (including discovery), not just liability." But the alleged support for that statement does not fit here. The United States Supreme Court decision that the Fifth Circuit cited as support for that statement, *Mitchell v. Forsyth*[14], arose from a case against a former United States Attorney General, and addresses how *qualified* immunity protects governmental defendants from disruptive discovery. We thus would question the strength of *Mitchell* as support for the proposition that a non-party state agency is completely immune from responding to a deposition notice or a subpoena duces tecum for records.

II.

**THE LIMITED SUBJECTS OF INQUIRY IN THE SUBPOENA ARE PROPORTIONAL TO THE HARM AT ISSUE**

---

[14] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Whether it is because five NSP employees (out of more than 700[15]) will need to provide testimony; or because NSP's in-house counsel wishes to observe the depositions along with the Assistant Attorney General; or because of some other reason, NSP warrants that the 30(b)(6) subpoena is not just disruptive on the ordinary scale, but "severe interference with government functions." NSP has not shown that it will need to stop fighting crime, suspend motorist assistance in a blizzard, or tell recruits in its training academy that their matriculation will be delayed.

"Severe interference with government function" is not defined in decisional authority. The cases using that term are those that appear in the Attorney General's Brief (the 2012 case of *Alltel Comms., Inc. v. DeJordy*[16], and *Russell v. Jones*[17]) and a district court case, which also involved tribal sovereignty, that quotes that language from *DeJordy*.[18] We acknowledge an interest in protecting non-party witnesses "from being subjected to excessive discovery burdens in litigation in which they have little or no interest"[19]; but producing witnesses for another lawyer to depose should not rise to the level of "severe interference" with the functions of a non-party that is a complex organization that employs individuals who are capable of appearing at a deposition.[20]

---

[15] https://statepatrol.nebraska.gov/#:~:text=Our%20State%20Headquarters%20housing%20NSP,to%20the%20citizens%20of%20Nebraska.

[16] *Alltel Comms., Inc. v. DeJordy,* 675 F.3d 1100 (8th Cir. 2012).

[17] *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).

[18] *Temple v. Roberts*, 2019 WL 6528215 (D.S.D. 2019).

[19] *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002).

[20] *See, e.g., In re Third Party Subpoena of American Suzuki Motor Corp.*, 2012 WL 12903125 (C.D. Cal. 2012) ("Requiring ASMC to produce responsive documents within its control and to make available for deposition those individuals who are most knowledge concerning the noticed deposition topics is not unduly burdensome. ASMC concedes that it possess some relevant information, but argues that requiring it to designate employees competent to testify as to matters

And, NSP's relationship to WILKIE makes it hardly a stranger to this litigation. NSP is WILKIE's employer. The Court's files for this matter reflect that the Office of the Nebraska Attorney General (and this Assistant Attorney General in particular) herein initially entered an appearance[21] for all NSP employees, until recognizing a conflict of interest and withdrawing.

In the products liability case of ***Buchanan v. American Motors Corp.***[22] the defendant manufacturer sought to subpoena a renowned expert witness on the relevant subject matter regarding his adverse research study about the defendant's product. Its rationale was that the defense expected its adversary to use the research study as to express a *de facto* adverse expert opinion about the safety of the defendant's product. The witness was a true stranger to the litigation, not an expert or adviser to any party.[23]

The district court quashed the defense's subpoena, and the United States Court of Appeals for the Sixth Circuit affirmed that decision. It found that

> [c]ompliance with the subpoena would require the expert who has no direct connection with the litigation to spend many days testifying and disclosing all of the raw data, including thousands of documents, accumulated over the course of a long

---

already available from Suzuki constitutes an undue burden. ASMC argues that preparation of competent witnesses will require obtaining and reviewing 'thousands of Suzuki's confidential documents [and] speaking with a variety of Suzuki employees.' What is more, ASMC contends that it 'does not have possession, custody or control of Suzuki's documents or employees.' These arguments miss the mark. Suzuki indicated that ASMC either possesses responsive documents or employs individuals capable of addressing [plaintiff's] discovery requests, and [plaintiff's] subpoena of ASMC was a good faith response. [Plaintiff] now seeks documents and testimony relating to the manner and means by which Suzuki's proposed trademark will be used in the United States. As Suzuki's American distributor, ASMC is uniquely positioned to respond to such discovery requests.")

[21] Filings #15, 42.

[22] *See Buchanan v. American Motors Corp.*, 697 F.2d 151 (6th Cir. 1983).

[23] *Id.* at 152.

and detailed research study. Like the District Court, we note that the expert is not being called because of observations or knowledge concerning the facts of the accident and injury in litigation or because no other expert witnesses are available.[24]

In its reasoning, the court emphasized more than once that that witness was a stranger to the litigation.

That is not true here. The Complaint alleges WILKIE was an employee and agent of NSP and that he was "acting under color of law – under the constitutions, statutes, administrative rules, customs, policies and usages of the Nebraska State Patrol, the State of Nebraska and the United States – and had assumed the responsibilities, activities, and rights involved in exercising their roles as members of NSP's professional staff."[25] Asking NSP to designate knowledgeable witnesses to testify about WILKIE's training is not comparable to the random summons of a disconnected expert in *Buchanan*.

Rule 30(b)(6) deposition notices typically identify a number of topics of inquiry, which often necessitate the designation of multiple witnesses. "The more complex the case, the greater the number of topics to be explored during the deposition and the greater number of witnesses."[26] If each witness were counted separately, a party could easily exhaust the number of allowable depositions in one or two 30(b)(6) depositions. "The Advisory Committee Notes make clear that the drafters intended to avoid that problem by counting a 30(b)(6) deposition as a single

---

[24] *Id.*

[25] *Complaint* at ¶ 64.

[26] *Duran v. Sara Lee Corp.*, 2013 WL 12308200 at *2 (W.D. Mich. 2013).

deposition, regardless of how many individuals were required to be designated to comply with a 30(b)(6) notice."[27]

To comply with Rule 30(b)(6), the organizational deponent "has an affirmative duty to make available 'such number of persons as will' be able 'to give complete, knowledgeable, and binding answers' on its behalf."[28] "Because of this obligation, and because it is rare for one employee to have personal knowledge of everything known to a corporation, it is not unusual for a 30(b)(6) deposition to involve extensive preparation and multiple witnesses."[29]

We read the Affidavit of Mark Boyer to argue, in summary, not that the topics of the 30(b)(6) subpoena are inappropriate; but that producing five employees and accompanying AAG Fern to the deposition is too much trouble for Mr. Boyer.  Our blunt response is that this case is not about a twisted ankle:  it is about the death of an unarmed husband and father who was shot, at a distance of 3 feet, by an officer who was trained, was employed and was acting in service to NSP.  It is not too much to ask that NSP comply with this subpoena.[30]

*Wulz v. Bank of China, Ltd.*[31] arose from a terrorist bombing in Tel Aviv, Israel.  Four family members of a victim who died in the blast sued the Bank of China, alleging it had provided

---

[27] *Id.*

[28] *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).

[29] *See Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 214); *In re Weatherford Int'l Securities Litig.*, 2013 WL 4505259 at *3 (S.D.N.Y. 2013); Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment.

[30] It is not clear from NSP's submission whether Mr. Boyer will be solely responsible for that preparation, whether he and AAG Fern will work collaboratively or if there is some other way to prepare the witnesses.

[31] *Wulz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014).

material support and resources to the terrorists. The plaintiffs noticed a 30(b)(6) deposition of a non-party Israeli bank, seeking testimony on a variety of topics that were germane to the funding of the terrorists. The Israel bank moved to quash, claiming that the subpoena created an undue burden on its organization because all of the individuals with relevant information about the challenged wire transfers resided or worked in Jerusalem.

The United States District Court for the Southern District of New York rejected this argument. It held that

> Even if [the Israeli bank] is a non-party witness and all of the documents or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an undue burden when weighed against BOC's need for the testimony. A person in New York can easily be educated by a person in Israel by telephone, email or videoconference and relevant documents can easily be transmitted on a single flash drive or CD–ROM. Further, in the age of videoconferencing, [The Israeli bank] can avoid the burden of educating a New York employee altogether by agreeing to a deposition by video, to which BOC has consented.[32]

The court noted that the issue of the scienter of the Bank of China was "critical to this case," and thus the Israeli bank's documents and testimony were "directly relevant to the claims and defenses."[33] For all of those reasons, the court denied the non-party Israeli bank's motion to quash.

Its reasoning resonates here. The harm at issue in this case was existential, ending one life completely and changing forever the lives of PRINT's family. WILKIE has asserted that his actions were reasonable, and he will move for qualified immunity. To survive that motion, Plaintiff must show that WILKIE's actions were objectively unreasonable.[34] We expect that how WILKIE was trained will reveal evidence that contradicts WILKIE's assertion that his actions, in shooting an

---

[32] *Id.* at 99.

[33] *Id.* at 102.
[34] *Shelton v. Stevens*, 964 F.3d 747, 762 (8th Cir. 2020).

unarmed man from a distance of 3 feet, were objectively reasonable. Thus what Plaintiff now seeks in this 30(b)(6) deposition is evidence of how WILKIE was trained, in matters that directly bear on the claims and defenses in this case: use of force, mental health, police service dogs, barricaded subjects, Special Weapons and Tactics (SWAT) and the body-worn cameras that troopers are ostensibly to wear and operate in these kinds of law enforcement events.

We do not disagree that it should take time to prepare five witnesses, and it will take time for agency counsel for this non-party to observe their depositions.[35] If anything, however, NSP has more of a relationship to WILKIE than the Israeli bank had to the defendant of *Wulz*, and the individuals with knowledge in this matter are within 90 miles of Lincoln, not across the ocean in Jerusalem. This is not a disproportionate burden, given the total loss of Print Zutavern to his family and what is now at stake.

## Conclusion

For these reasons, Plaintiff asks this Court to OVERRULE the Nebraska State Patrol's Objection to the Magistrate Judge's Order Denying NSP's Motion to Quash.

BRYAN S. MICK, Personal Representative of the Estate of PRINT ZUTAVERN, Deceased, Plaintiff,

By: /s/ *Maren Lynn Chaloupka*
Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Law LLC
1906 Broadway
P.O. Box 1724
Scottsbluff, Nebraska 69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

---

[35] It is not clear whether both agency counsel Boyer and the Assistant Attorney General will attend the nonparty 30(b)(6) deposition.

-AND-

Colby C. Vokey – TX State Bar # 24043391
Law Firm of Colby C. Vokey PC
6924 Spanky Branch Court
Dallas, TX  75248-1450
vokeylaw@colbyvokey.com

## CERTIFICATE OF COMPLIANCE

I hereby certify this document complies with NEB. CIV. R. 7.1(d)(1). It contains 4665 words, as calculated by the word-count function of Word, including all text, the caption, headings, footnotes, and quotations.

    /s/ Maren Lynn Chaloupka

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument has been sent via email on this 28th day of February 2024, to the following:

Jeffery R. Kirkpatrick
Governmental Law, LLC
8040 Eiger Drive
Suite B
Lincoln, NE 68516
jeff@nrmainc.info

Erik W. Fern
Office of the Attorney General
2115 State Capitol
Lincoln, NE  68509
erik.fern@nebraska.gov

Ryan M. Kunhart
Claire E. Monroe
Alison C. Clark
Dvorak Law Group, LLC
9500 W. Dodge Road, Suite 100
Omaha, NE  68114
rkunhart@ddlawgroup.com
cmonroe@ddlawgroup.com
aclark@ddlawgroup.com

    /s/ Maren Lynn Chaloupka